IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DANIEL ROOT,<br><br>                    Plaintiff,<br><br>vs.<br><br>MONTANA DEPARTMENT OF CORRECTIONS dba MONTANA WOMEN'S PRISON, PAUL LAW and ALEX SCHROECKENSTEIN,<br><br>                    Defendants. | CV 18-164-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

Plaintiff Daniel Root brings this action against Defendants Montana Department of Corrections (the "DOC"), Paul Law and Alex Schroeckenstein for retaliation relating to his employment as a correctional officer at the Montana Women's Prison. (Doc. 1.)

Presently before the Court is Defendants' Motion to Dismiss, which has been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B). The motion is fully briefed and ripe for the Court's review. (Docs. 6, 7, 8, 9, 10.)

Having considered the parties' submissions, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED in part and DENIED in part**.

/ / /

/ / /

## I.  BACKGROUND

For the purposes of this motion, the Court accepts as true the following allegations contained in Root's Complaint.  *Wyler Summit P'ship v. Turner Broadcasting Sys, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

Root is an employee of the DOC, and works as a correctional officer at the Montana Women's Prison.  At all times relevant to the allegations in the Complaint, Defendant Law was Root's supervisor, and Defendant Schroeckenstein was the assistant warden and overall supervisor of the Montana Women's Prison's employees.

Root alleges that in early May 2017, he received information that Law had engaged in inappropriate sexual conduct with or towards a female prisoner.  Within days, Root reported the information to a superior, Lieutenant Moorman, as required by DOC policy and the Prison Rape Elimination Act ("PREA").

On May 18, 2017, Law expressed to Root his anger at being the subject of an investigation.  Root alleges Law subsequently made false accusations claiming Root and one or more other officers had made malicious comments about Law.

On May 24, 2017, Law conducted a staff briefing, where he was angry and agitated.  Law reportedly acted out during the briefing and expressed disdain for any officer who makes complaints against him, accused them of being vindictive, derided their commitment to the job, and recommended any such officer stop

coming to work and take time off.  Root contends Law's purpose in acting out at the briefing was to deter subordinate officers from making complaints about Law's conduct.

After the May 24, 2017 briefing, Root presented a grievance under his union contract based on Law's conduct at the briefing.  On June 8, 2017, DOC human resources personnel requested that Root suspend his grievance pending an investigation of Law's conduct.  Root was promised he could re-file the grievance if he deemed it appropriate following the DOC investigation.  The next day, Root agreed to suspend his grievance as requested.

The DOC's investigation resulted in a decision to discipline Law.  But the DOC declined to advise Root what discipline was imposed, or what remedial action was taken to prevent Law's misconduct in the future.  Root alleges the DOC also informed him on July 14, 2017, that his grievance had been denied, contrary to its representation that it would be suspended.

Beginning in July 2017, Root was assigned to act as "Officer in Charge" of the night shift.  He performed the duties of the Officer in Charge on a majority of his working days from July 2017 through December 2017.  In November 2017, Root applied for a promotion to the position of DOC Lieutenant.  His application was rejected by Schroeckenstein in January 2018.  Root alleges another officer was promoted who had less experience and qualifications for the job, and who had been

subject to prior disciplinary actions. Root asserts he has never been subject to any disciplinary action by the DOC. He also states that shortly after his application was rejected, he was recognized as "Employee of the Quarter" for his job performance, including his work as Officer in Charge of his shift. Root alleges the DOC's decision to promote the other candidate over him was not made on the basis of merit and qualification, or without regard to the fact he had engaged in protected activities.

Root contacted the Montana Human Rights Bureau on January 22, 2018 for purposes of filing a claim of discrimination and retaliation with that agency and the EEOC. On February 23, 2018, he filed his complaint with the Human Rights Bureau and EEOC. He filed an amended complaint on February 27, 2018.

In May 2018, Root was subpoenaed to testify in court concerning Law and his conduct at work, and he was interviewed by the attorneys who subpoenaed him. From the interview, Root learned further information indicating Law had engaged or might engage in sexual misconduct toward female prisoners. Root ultimately appeared in court and testified on or about June 6, 2018.

Root requested to be paid his usual compensation for the time he spent responding to the subpoena. The DOC declined his request as not work related, and only paid him for the one hour of testimony given on June 6, 2018. Root made no further effort to recoup his lost wages out of concern of retaliation.

Following his interview with the attorneys involved in his court appearance, Root advised DOC human resources on May 18, 2018 that he had received additional information about Law's actions or propensity for sexual misconduct with female inmates. Root asked whether there were any options for reporting the PREA information outside the DOC because he was concerned about adverse actions being taken against him. On May 22, 2018, Root was advised he could report the information to the YMCA. But under DOC guidelines, the YMCA was not a third party to whom DOC officers or prisoners could report PREA information.

On July 13, 2018, the DOC ordered Root to report any PREA information about Law to DOC personnel. He was threatened with action for violation of DOC policy if he did not respond as ordered. Therefore, Root reported the PREA information on July 13, 2018 to DOC human resources and his immediate supervisor, Lieutenant Johnston.

Root alleges that after reporting the PREA information, Johnston acted out against him during their shift, made false and accusatory statements regarding Root's conduct in making the PREA report, and demanded Root meet unrealistic work assignments before the end of his shift. Root filed a grievance on July 20, 2018, concerning Johnston's actions, and he was re-assigned to a shift not

5

commanded by Johnston. But on August 14, 2018, Root's grievance was denied, and he was returned to the shift commanded by Johnston.

On September 12, 2018, Root met with a member of the media outside of work, who requested information regarding conditions at the prison, particularly instances of sexual misconduct by ranking officers. Root called the DOC to ask for clarification and guidance about whether he could discuss such matters with the media. Root alleges the DOC command officers declined to provide any guidance.

On November 18, 2018, Root filed this lawsuit, alleging retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Count I); the Montana Human Rights Act ("MHRA"), Mont. Code Ann. Title 49 (Count II); and 42 U.S.C. § 1983 for violation of his First Amendment rights (Count III).

## II. ANALYSIS

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

A court considering a Rule 12(b)(6) motion must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *Wyler Summit P'ship*, 135 F.3d at 661. However, "bare assertions… amount[ing] to nothing more than a 'formulaic recitation of the elements'…for the purposes of ruling on a motion to dismiss are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). Such assertions do nothing more than state a legal conclusion, even if the conclusion is cast in the form of a factual allegation. *Id.*

Defendants move to dismiss the Title VII and MHRA claims against Law and Schroeckenstein in their entirety, as well as the § 1983 claim against Law. Defendants argue Law and Schroeckenstein cannot be liable in their individual

capacities under either Title VII or the MHRA.  Defendants also move to dismiss the Title VII and MHRA claims against the DOC to the extent the claims relate to retaliation that occurred after January 2018.  Defendants argue Root has failed to exhaust his administrative remedies for the alleged retaliatory conduct after January 2018.  Finally, Defendants argue the § 1983 claim against the DOC should be dismissed because the DOC is not a "person" subject to liability under § 1983.

In response, Root concedes that only the DOC can be held liable for violation of his rights under Title VII and the MRHA.  He also concedes that his § 1983 claim against the DOC should be dismissed.  With respect to his Title VII and MRHA claims against the DOC, Root argues that he has exhausted his administrative remedies with respect to the alleged retaliatory conduct occurring before and after January 2018.  As to his § 1983 claim against the individual Defendants, Root argues that he engaged in constitutionally protected speech as a citizen, and both Law and Schroeckenstein can be held liable for retaliating against him because of those activities.

### A.   Title VII Claim Against the Individual Defendants

Law and Schroeckenstein contend Root cannot state a Title VII claim against them.  The Ninth Circuit has "long held that Title VII does not provide a separate cause of action against supervisors or co-workers." *Craig v. M & O*

*Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007). *See also Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1189 (9th Cir. 1998); *Holly D. v. California Inst. of Tech.*, 339 F.3d 1158, 1179 (9th Cir. 2003) ("We have consistently held that Title VII does not provide a cause of action for damages against supervisors or fellow employees."). Root alleges that both Law and Schroeckenstein are supervisors at the Montana Women's Prison. (Doc. 1 at ¶¶ 5-6.) As such, Title VII liability does not extend to them. Root has conceded as much in his opposition.

Accordingly, it is recommended that Root's claim in Count I for retaliation under Title VII against Law and Schroeckenstein be dismissed with prejudice.

### B.     MHRA Claim Against the Individual Defendants

Law and Schroeckenstein also argue they are immune from individual liability for Root's MHRA claim under Mont. Code Ann. § 2-9-305(5). Section 2-9-305 provides in relevant part:

> In an action against a governmental entity, the employee whose conduct gave rise to the suit is immune from liability by reasons of the same subject matter if the government entity acknowledges or is bound by a judicial determination that the conduct upon which the claim is brought arises out of the course and scope of the employee's employment, unless the claim constitutes an exclusion provided in subsections (6)(b) through (6)(d).

Mont. Code Ann. § 2-9-305(5).

The Montana Supreme Court has confirmed that § 2-9-305(5) provides

immunity from claims against individual employees for actions performed within the scope of their employment when a suit against the government entity arises out of the same subject matter. *See Griffith v. Butte School Dist. No. 1*, 244 P.3d 321, 335 (Mont. 2010) ("Section 2-9-305(5), MCA, serves as a complete bar to holding [individual employees] liable because it provides immunity from suit to individually-named defendants for actions performed within the course and scope of the official's employment."); *Germann v. Stephens*, 137 P.3d 545, 553 (Mont. 2006).

Here, the DOC has acknowledged the allegations against Law and Schroeckenstein relate to conduct undertaken while in the course and scope of their employment with the State. (Doc. 10 at 2.) Under those circumstances, Root does not dispute that only the DOC can be held liable under the MHRA. Consequently, Law and Schroeckenstein are immune under § 2-9-205(5) from individual liability for Root's retaliation claims.

It is therefore recommended that Root's claim in Count II for retaliation under the MHRA against Law and Schroeckenstein be dismissed with prejudice.

### C. §1983 Claim Against the Individual Defendants

Law and Schroeckenstein initially argued Root's § 1983 claim for violation of his First Amendment rights was deficient because Root did not plead plausible facts to show he engaged in constitutionally protected speech. In response, Root

concedes that his initial May 2017 internal report was not constitutionally protected speech. But he asserts the subsequent statements he made to outside agencies and third parties constituted protected speech. In reply, Law and Schroeckenstein appear to acknowledge that Root's external communications are protected speech. Nevertheless, they argue Root failed to allege Law personally participated in the First Amendment retaliation, and that he only pled one instance of personal participation by Schroeckenstein. Thus, Law and Schroeckenstein argue the §1983 claim against Schroeckenstein should be limited to the 2017 grievance, and the claim should be dismissed against Law in its entirety.

The First Amendment protects public employees from employment retaliation for their protected speech. *Hagen v. City of Eugene*, 736 F.3d 1251, 1257 (9th Cir. 2013). To qualify as protected speech, "the employee must have uttered the speech as a citizen, not an employee." *Marable v. Nitchman*, 511 F.3d 924, 929 (9th Cir. 2007). When an employee's speech is made pursuant to his official duties, it is not protected. *Hagen*, 736 F.3d at 1257. But "a public employee's speech on a matter of public concern is protected 'if the speaker 'had no official duty' to make the questioned statements, . . . or if the speech was not the product of 'performing the tasks the employee was paid to perform.'" *Id.*

Generally, when an employee reports misconduct up the chain of command to his supervisors, that speech is not constitutionally protected. *Id.* at 1258. "If, on

the other hand, 'a public employee takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen.'" *Id. See also Freitag v. Ayers*, 468 F.3d 528, 546 (9th Cir. 2006) (holding prison guard's complaints to a third party and outside agency were entitled to First Amendment protection); *Ho-Chuan Chen v. Dougherty*, 625 F.Supp.2d 1091, 1098 (W.D. Wash. 2008) (holding public employees' union grievance was constitutionally protected speech).

Root identified the following instances of speech that allegedly resulted in retaliation:

1. 2017 union grievance. (Doc. 1 at ¶ 13.)
2. Filing of the complaint with the Montana Human Rights Bureau. (*Id.* at ¶¶ 26-27.)
3. Court testimony and discussion with third parties. (*Id.* at ¶ 28.)
4. Request to DOC to report information to an outside agency. (*Id.* at ¶¶ 29-32.)
5. July 2018 union grievance. (*Id.* at ¶ 38.)
6. Meeting with local media. (*Id.* at ¶ 41.)

The Court finds Root has plead plausible facts to show he engaged in protected speech, as all of the identified instances of speech involved external communications to third parties. Nevertheless, the Court agrees with Law and Schroeckenstein that Root has not adequately pled personal participation by Law in any alleged First Amendment retaliation. Further, Root has only alleged personal action by Schroeckenstein in relation to the 2017 union grievance. "In order for a

person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

As such, the Court recommends that Root's claim in Count III against Law should be dismissed in its entirety, and that his claim in Count III against Schroeckenstein be limited to the 2017 union grievance. Because it is possible Root could cure the defect in his pleading, the dismissal should be without prejudice.

### D. Title VII and MHRA Claims Against the DOC

The DOC argues there is no subject matter jurisdiction over any alleged claims under Title VII or the MHRA that occurred after January 2018. The DOC points out that Root filed his complaint with the Montana Human Rights Bureau/EEOC on February 23, 2018 and amended the complaint on February 27, 2018. Thus, the DPC asserts Root failed to exhaust his post-January 2018 allegations.

To establish subject matter jurisdiction of his Title VII claim, Root must exhaust his administrative remedies. 42 U.S.C. § 2000e-5(e); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002). A plaintiff exhausts his administrative remedies "by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to

13

investigate the charge." *Id.* Federal courts require "strict adherence" to the exhaustion requirement. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 108 (2002).

A plaintiff who alleges more than one discrete retaliatory act must timely exhaust administrative remedies for each alleged act. *Id.* at 114. Nevertheless, allegations of discrimination which are not included in the plaintiff's administrative filing may be considered exhausted if the claims are "like or reasonably related to the allegations contained in the EEOC charge." *B.K.B.,* 276 F.3d at 1100. To determine whether an un-exhausted claim is "reasonably related" to the EEOC charge, courts may consider "such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *Id.* Courts should also consider whether the claims "are consistent with the plaintiff's original theory in the case." *Id.* In making this determination, courts are to construe the EEOC charge "with utmost liberality." *Id*. Where, as here, a plaintiff alleges acts of retaliation that post-date the filing of the administrative complaint, the court has subject matter jurisdiction over the post-filing claims that "fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to

grow out of the charge." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003).

"Whether a plaintiff in a Title VII action has timely exhausted her administrative remedies 'is an affirmative defense, [so] the defendant bears the burden of pleading and proving it.'" *Kraus v. Presidio Tr. Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1046 n.7 (9th Cir. 2009) (quoting *Bowden v. United States,* 106 F.3d 433, 437 (D.C. Cir. 1997)*.* See also, *Hardaway v. Harford Public Works Dept.*, 879 F.3d 486, 490-92 (2d Cir. 2018) (collecting cases and finding Title VII exhaustion is an affirmative defense). In such circumstances, the issue of exhaustion must ordinarily be decided on summary judgment. "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6). Otherwise, defendants must produce evidence proving failure to exhaust in order to carry their burden." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

This is not one of the rare cases where a failure to exhaust is fully evident from the face of the Complaint. Root has alleged that he filed an administrative charge with the Human Rights Bureau and the EEOC, and that he has received notices of the right to sue from those agencies. (Doc. 1 ¶¶ 27, 47.) Although some of Root's allegations of retaliation post-date his EEOC charge, the Complaint does not clearly show the allegations were not "like reasonably related to the EEOC

15

charge," or that claims did not fall "within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge." All of the allegations of retaliation are based on his efforts to report PREA information regarding Law. Moreover, applying the relevant factors from *B.K.B.* would tend to support that they are like or reasonably related. The events occurred in close proximity in time, and the basis of the alleged discrimination, as well as the perpetrators, the location and the theory underlying the alleged discrimination, are the same for all the claims.

Therefore, it cannot be determined on the face of the complaint whether all Roots claims have been effectively exhausted. Drawing all reasonable inferences in Root's favor, the Court finds Root has plausibly alleged exhaustion for purposes of a Rule 12(b)(6) motion.

Accordingly, it is recommended that Defendants' motion to dismiss on this basis be denied.

### E. §1983 Claim Against the DOC

The DOC argues it cannot be sued under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action

16

at law[.]

42 U.S.C. § 1983.

States and state agencies are not considered "persons" subject to liability under § 1983. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997) ("§ 1983 creates no remedy against a State"); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Howlett v. Rose,* 496 U.S. 356, 365 (1990); *Flint v. Dennison,* 488 F.3d 816, 824–25 (9th Cir.2007). Root agrees that as a state agency, the DOC has Eleventh Amendment immunity from the § 1983 claim.

Because the DOC is not a "person" under § 1983, the Court recommends the claim in Count III against the DOC should be dismissed with prejudice.

## III. CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss be **GRANTED in part and DENIED in part** as follows:

1. Count I against Law and Schroeckenstein be dismissed with prejudice;

2. Count II against Law and Schroeckenstein be dismissed with prejudice;

3. Count III against Law be dismissed in its entirety without prejudice;

4.      Count III against Schroeckenstein be limited to the 2017 union grievance, and the remainder dismissed without prejudice.

5.      Count III against the DOC be dismissed with prejudice.

6.      The remainder of Defendants' Motion to Dismiss be denied.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 23rd day of May, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge