IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DANIEL ROOT,<br><br>              Plaintiff,<br><br>vs.<br><br>MONTANA DEPARTMENT OF CORRECTIONS dba MONTANA WOMEN'S PRISON, PAUL LAW and ALEX SCHROECKENSTEIN,<br><br>              Defendants. | CV 18-164-BLG-SPW-TJC<br><br>**ORDER** |

      Plaintiff Daniel Root ("Root") brings this action against Defendants Montana Department of Corrections (the "DOC") and Alex Schroeckenstein for retaliation relating to his employment as a correctional officer at the Montana Women's Prison. (Doc. 1.) Presently before the Court is Root's Motion in Limine Regarding Spoliation of Evidence.[1] (Doc. 64.) The motion is fully briefed and ripe for the Court's review.

---

[1] Although captioned as a "Motion in Limine," Root's motion actually seeks sanctions. A motion "in limine" refers to "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Here, Root is not seeking to exclude evidence, but is rather seeking a sanction against the DOC for failing to preserve evidence. A motion for sanctions due to spoliation under Rule 37 and/or the Court's inherent power is a non-dispositive pre-trial matter "provided that the actual sanctions imposed are non-dispositive." *Apple Inc. v. Samsung Electronics Co., Inc.*, 888 F.Supp.2d 976, 987-88 (N.D. Cal. 2010). Because the Court is not imposing dispositive sanctions here, the determination of

1

Having considered the parties' submissions, the Court finds Root's motion should be **GRANTED in part and DENIED in part**.

I.   FACTUAL BACKGROUND

Root is an employee of the DOC, and works as a correctional officer at the Montana Women's Prison ("MWP"). Root alleges that in May 2017, he reported that his supervisor, Lt. Paul Law, had engaged in inappropriate sexual conduct with or towards a female prisoner in violation of the Prison Rape Elimination Act ("PREA").

After he did so, Law conducted a staff briefing on May 24, 2017, where he reportedly acted out and expressed disdain for any officer who made complaints against him, accused them of being vindictive, derided their commitment to the job, and recommended any such officer stop coming to work and take time off. Root contends Law's purpose in acting out at the briefing was to deter subordinate officers from making complaints about Law's conduct.

Based on Law's conduct at the briefing, Root presented a grievance under his union contract on May 26, 2017. Cynthia Davenport ("Davenport") was ultimately assigned to investigate the handling of the grievance. As part of her

---

Root's motion is within the province of the undersigned's authority under 28 U.S.C. § 636(b)(1)(A). *Id.*

2

investigation, Davenport conducted phone interviews with several witnesses, which she recorded by audiotape. The audiotapes were not produced in discovery, and the DOC has not been able to locate any of them.

In November 2017, Root applied for an open lieutenant position at the MWP. Root was interviewed for the position in January 2018, but was not selected. Handwritten notes from the January 2018 interview panel were produced to Root through the course of discovery in this suit.

On November 18, 2018, Root filed this lawsuit, alleging retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Count I); the Montana Human Rights Act ("MHRA"), Mont. Code Ann. Title 49 (Count II); and 42 U.S.C. § 1983 for violation of his First Amendment rights (Count III).

On December 4, 2019, Root again interviewed for an open lieutenant position at the MWP, and again was not selected. He was interviewed by a six-person panel, who took notes during the interview. The notes were not provided to Root in discovery. The DOC explained that the notes were shredded immediately after the interview, purportedly in accordance with HR procedure. Root has not amended the Complaint to include any claims based on the December 2019 hiring decision.

///

///

## II. DISCUSSION

Root contends the DOC failed to preserve material evidence in the form of: (1) the audio recordings of the investigative interviews regarding Root's May 26, 2017 grievance, and (2) the December 4, 2019 hiring committee's contemporaneous notes of candidate performance. Root moves for sanctions, including an adverse inference jury instruction. The DOC counters that Root is not prejudiced by the absence of the audio recordings or interview notes because the information was obtained through other discovery and is not relevant to any present claims.

### A. Legal Standards

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051-52 (S.D. Cal. 2015). Parties have a duty to preserve evidence that they know or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence. *Id.* at 1051. "The failure to preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences." *U.S. Legal Support, Inc. v. Hofioni,* 2014 WL 172336, *3 (E.D. Cal. Jan. 15, 2014) (citing *Thompson v. U.S. Dep't of Housing & Urban Dev.,* 219 F.R.D. 93, 100 (D.

Md. 2003)).

There are two sources of authority under which a district court can sanction a party for spoliation of evidence: under Rule 37 against a party who fails to preserve electronically-stored information, and pursuant to the inherent power of federal courts to levy sanctions in response to abusive litigation practices. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); Fed.R.Civ.P. 37(e).

Rule 37(e) governs the loss of electronically-stored information and provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>    (A) presume that the lost information was unfavorable to the party;
>    (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>    (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Thus, Rule 37(e) authorizes two tiers of sanctions for spoliation. Under subdivision (e)(1), the Court must find prejudice to the non-spoliating party from the loss of information. Rule 37(e)(1). "An evaluation of prejudice from the loss

of information necessarily includes an evaluation of the information's importance in the litigation." Rule 37, Advisory Committee Notes 2015 Amendment ("Committee Notes"). The range of available sanctions under (e)(1) is "quite broad." *Id.* But they must "not have the effect of measures that are permitted under subdivision (e)(2)." *Id.* Permissible sanctions under (e)(1) include measures such as "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions to which subdivision (e)(2) applies." *Id.*

Under subdivision (e)(2), the Court may impose more severe sanctions, including instructing the jury to presume the lost information was unfavorable to spoliating party. The measures listed in subdivision (e)(2), however, are only appropriate if the Court finds the spoliating party acted with the intent to deprive. Rule 37(e)(2). Courts are instructed to exercise caution in using the measures specified in subdivision (e)(2). Committee Notes. Even if a court finds an intent to deprive, that "does not require a court to adopt any of the measures listed in subdivision (e)(2)." *Id.*

Sanctions for the loss of evidence that is not electronically-stored may be imposed pursuant to the court's inherent authority. *Glover v. BIC Corp.*, 6 F.3d

1318, 1329 (9th Cir. 1993); *Spencer v. Lunda Bay Boys*, 2017 WL 11527978, *7 (C.D. Cal. Nov. 29, 2017). Courts generally consider the following factors in determining whether sanctions under the court's inherent power are warranted: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Apple Inc. v. Samsung Electronics Co., Ltd.*, 888 F.Supp.2d 976, 992 (N.D. Cal. 2012).

A wide range of sanctions may be imposed for spoliation under the court's inherent power, including ordering the exclusion of certain evidence, admitting evidence of the circumstances surrounding the destruction of evidence, instructing the jury that it may draw an adverse inference against the spoliating party, and entry of default judgment or dismissal. *Peschel v. City of Missoula*, 664 F. Supp. 2d 1137, 1142 (D. Mont. 2009). A party seeking an adverse inference instruction under the court's inherent power, must establish: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Apple, Inc.*, 888 F.Supp.2d at 989-90.

/ / /

### B.     Audio Recordings

Root argues he is prejudiced by the loss of the audio recordings for two reasons: (1) the recordings detail the circumstances of known retaliatory conduct by Law that is a central fact of Root's claims; and (2) the word choice and tone of the interviews would provide information and context that cannot be transmitted via notes alone.  Root, therefore, requests he be permitted to elicit testimony and present evidence at trial concerning the spoliated tapes.  He further requests an instruction advising the jury that the DOC had a duty to preserve the recordings and failed to do so, and that if the jury finds the DOC acted with intent to deprive him of evidence, it may presume the recordings were favorable to Root.

The DOC counters that Root is not prejudiced by the loss of the audio recordings.  The DOC asserts the recordings are irrelevant because Root's claim concerning the May 26, 2017 grievance was not timely preserved, and does not form a proper part of this litigation.  The DOC further argues that the lost information can be, and was restored through other discovery.

The Court finds Root is prejudiced by the loss of the audio recordings. Contrary to the DOC's argument, the events in May 2017 remain a part of Root's claims in this litigation.  Summary judgment based upon failure to timely exhaust administrative remedies has only been granted with respect to Root's MHRA claim in Count II of his Complaint.  (*See* Doc. 69 at 15-17 (granting partial summary

judgment on Count II for claims occurring prior to August 25, 2017), adopted by Doc. 72.)  The Defendants did not move for summary judgment based on failure to timely exhaust Root's Title VII claim in Count I.  Therefore, the May 2017 events, including the investigation of the May 26, 2017 grievance are at least still relevant to Root's retaliation claim in Count I.  Moreover, the audio recordings made during that investigation would likely have supplied probative evidence of what occurred, including providing context and tone to the witness statements.  This type of contextual information cannot be restored or replaced through additional discovery.  The loss of the audio recordings is, therefore, prejudicial to Root.  As such, sanctions are appropriate under Rule 37(e)(1).

    As a sanction for the DOC's spoliation, the Court finds Root should be permitted to present evidence and argument at trial concerning the lost audio recordings, and the DOC's intent with regard to the lost evidence.  The jury should be permitted to draw whatever reasonable inferences may follow from the evidence presented.  Root may also request the District Court give a jury instruction to assist the jury in its evaluation of such evidence.  The propriety of such an instruction will be determined by Judge Watters following the presentation of evidence at trial.  The Court finds these measures are sufficient, but not "greater than necessary to cure the prejudice" resulting from the DOC's spoliation of the audio recordings.  Rule 37(e)(1).

On the present record, the Court does not find the DOC acted with the necessary intent to deprive Root of the ability to use the audio recordings to justify more severe sanctions under Rule 37(e)(2).  Davenport testified that during the time the audio recordings were made, she was under extreme personal and professional stress, which tends to indicate the absence of a culpable state of mind.  That being said, if further information develops through trial that shows the DOC intended to deprive Root of the recordings, Root may request the District Court consider giving an adverse inference instruction, should the Court determine it is warranted.

### C.     Interview Notes

Root asserts the DOC was, at best, grossly negligent in destroying the interview notes from the 2019 hiring panel.  He argues that the fact the DOC preserved the notes from his 2018 interview raises a reasonable suspicion that the 2019 notes were destroyed with the intent to deprive him of material evidence.  Root, therefore, requests the Court give an adverse inference instruction, directing the jury to presume that the lost notes are relevant and favorable to his case.

In response, the DOC argues that because Root has not amended the Complaint to include any claim arising from the December 2019 hiring decision, the notes from that interview are not relevant.  The DOC further asserts that four of

10

the six December 2019 interview panel members have been deposed, and therefore, Root was able to obtain any relevant information by other means.

The DOC should have preserved the notes from the December 2019 interview. For one, the present litigation was ongoing when the December 2019 interview was conducted. The DOC, therefore, reasonably should have known the evidence could be relevant to the litigation. Further, Administrative Rule of Montana 2.21.3724(4) requires State agencies to retain recruitment and hiring records for a period of three years, which includes "all applications, supplemental question responses, *evaluation notes*, reference checks, and any other application materials received." Mont. Admin. R. 2.21.3726 (4)(a) (emphasis added). Nevertheless, the Court finds sanctions are not warranted for the spoliation.

The bare fact that evidence has been lost or destroyed "does not necessarily mean that the party has engaged in sanction-worthy spoliation." *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013). To support a finding that sanctionable spoliation has occurred, the lost or destroyed evidence must be relevant or material. *Wooten v. BNSF Railway Co.*, 2018 WL 2417858, *8 (D. Mont. May 29, 2018). *See also Lavell Enterprises, Inc. v. Am. Credit Card Processing Corp.*, 2007 WL 4374914, *11 (D. Mont. Dec. 11, 2007) ("Absent a finding that the destroyed evidence was relevant or material, a sanction for spoliation cannot be imposed.").

"Courts generally agree that 'relevance' for spoliation purposes 'is a two-pronged finding of relevance and prejudice' because 'for the court to issue sanctions, the absence of the evidence must be prejudicial to the party alleging spoliation of evidence.'" *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 627 (C.D. Cal. 2013) citing *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 531 (D. Md. 2010). The prejudice inquiry looks to whether the non-spoliating party's ability to go to trial was impaired or the loss of information threatened to interfere with the rightful decision of the case. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006); *Reinsdorf*, 296 F.R.D. at 627 (noting the non-spoliating party must show "that the evidence would have been helpful in proving its claims or defenses – i.e., that the innocent party is prejudiced without the evidence").

Here, the lost interview notes are not relevant or material to the claims in this case because Root has not amended the Complaint to bring any retaliation claims based on the 2019 hiring decision. Moreover, the notes from the December 2019 interview would not be material or probative of whether retaliation occurred during the January 2018 interview. The loss of the interview notes, therefore, has not undermined the "search for the truth" of what happened at any of the times relevant to the claims in this case. *Wertheimer H., Inc. v. Ridley USA, Inc.*, 2020 WL 1031141, *1 (D. Mont. Mar. 3, 2020). As a result, the Court finds Root is not prejudiced by the loss of the information.

Accordingly, Root's request for sanctions, including an adverse inference instruction, based on the DOC's destruction of the 2019 interview notes is denied.

**D.     Fees and Costs.**

Finally, Root requests the Court grant a remedial award of fees and costs incurred related to the DOC's spoliation of evidence. Monetary sanctions may be imposed where one party has lost or destroyed evidence. *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 558 (N.D. Cal. 1987). Here, however, the Court does not find monetary sanctions are warranted. Root's request for costs and fees is therefore denied.

**III.    CONCLUSION**

Based on the foregoing, **IT IS HEREBY ORDERD** that Root's Motion in Limine Regarding Spoliation of Evidence (Doc. 64) is **GRANTED in part and DENIED in part**.

IT IS ORDERED.

DATED this 23rd day of April, 2021.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge